UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Sanjeev Lath</u>

  v.          Case No. 18-cv-928-PB

<u>PennyMac Loan Services LLC</u>

**<u>REPORT AND RECOMMENDATION</u>**

  Pro se plaintiff Sanjeev Lath filed this suit for a declaratory judgment (Count 1) and state claims of conversion (Counts 2 and 5), trespass (Count 3), and unjust enrichment (Count 4).  Defendant PennyMac Loan Services LLC filed a motion to dismiss Counts 1, 2, and 3.  Doc. 15.  Lath opposes dismissal.  PennyMac's motion has been referred to the undersigned magistrate judge for a report and recommendation. As discussed below, the court recommends that the district judge grant the motion in part and deny it in part.

**<u>Standard of Review</u>**

  A. <u>Judgment on the Pleadings</u>

  Because PennyMac filed its answer before filing the motion to dismiss, the motion to dismiss is construed as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  <u>See</u> <u>e.g.</u>, <u>Weeks v. Five Bros. Mortg. Servs. & Securing,</u>

Inc., 2014 WL 1379335, at *3 (D.N.H. April 9, 2014). Rule 12(c) implicates the pleadings as a whole, as opposed to merely the complaint as in a Rule 12(b)(6) motion. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006). Thus, to the extent the facts alleged in the answer do not contradict the facts in the complaint, the court may consider them. Goodman v. Williams, 287 F. Supp. 2d 160, 161 (D.N.H. 2003).

When a motion for a judgment on the pleadings is used to attack the plausibility of a complaint, the motion is evaluated under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Diaz-Nieves v. United States, 858 F.3d 678, 689 (1st Cir. 2017); Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). Judgment on the pleadings, therefore, is appropriate if the facts from the pleadings, taken in the light most favorable to the nonmovant, fail to allege a plausible entitlement to relief. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-58 (2007)). The court, however, disregards conclusory allegations. Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013). The complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[.]" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (citing Twombly, 550 U.S. at 556).

B.   Facts and Documents Outside the Pleadings

Lath filed 54 exhibits with his objection to PennyMac's motion. When evaluating a motion for judgment on the pleadings, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). The court may also consider "documents the authenticity of which are not disputed by the parties," official public records, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3-4; see also Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007).

Generally, the exhibits Lath attached to his objection do not meet that standard or are not relevant to PennyMac's motion. Having reviewed the exhibits, the court has found that only one exhibit, doc. no. 16-25, Exhibit 25, which is a photograph of the abandonment notice that Lath alleges PennyMac posted to the door of his condominium unit, is both relevant to the issues before the court and warrants consideration under Watterson.

3

**Background**

Lath owned a condominium unit in a "secured building" in Manchester, New Hampshire. Doc. 8 ("Compl.") ¶¶ 10, 29, 39. He alleges that PennyMac was the mortgagee[1] on the unit between 2015 and 2017. Id. ¶ 2.

On February 2, 2017, Lath applied for a "Certificate of Compliance" under the Housing Code of the City of Manchester ("Housing Code")[2] to rent out the unit. Id. ¶ 10.[3] The unit was inspected the same day.

On February 17, 2017, a violation notice was issued. Lath's unit was found in violation of Housing Code §§ 150.050 (smoke and fire damage to interior surfaces), 150.084 (plumbing fixtures in need of repair), 150.088 (missing kitchen appliances), and 150.090 (missing smoke and carbon monoxide detector). Doc. 8-1, Compl. Exh. 1. A reinspection was scheduled for April 12, 2017.

---

[1] Lath alleges that PennyMac was the "mortgagor", but the court assumes that he meant "mortgagee".

[2] The Housing Code is available online at https://www.manchesternh.gov/pcd/Regulations/HousingCodeOrdinance.pdf.

[3] "It shall be unlawful for anyone . . . to rent, offer for rent, or allow any person to occupy any dwelling, dwelling unit, or condominium unit without a certificate of compliance . . . ." Housing Code § 150.100.

On July 27, 2017,[4] with his apartment still not in compliance with the Housing Code, Lath rented his unit to Peter Fiasconaro.  However, on July 30, Manchester removed Fiasconaro "and imposed a health code violation" on the unit.  Compl. ¶ 16.  The city Health Department issued an abatement letter to Lath on August 4, 2017.  The abatement letter stated as follows:

> Dear Mr. Lath:
>
>   You are hereby notified that a condition . . . has been identified and is existent on the premises at [Lath's condominium unit] in the form of a broken sewer pipe(s) and resultant discharge of effluent into [the unit below] and potentially other units.  This was determined during a site visit on July 31, 2017 and similar notice was given to the occupant of the unit at the time of the visit.
>
>   You are hereby ordered to abate the nuisance caused as a result of the violation, through repair of faulty plumbing, obtaining a valid plumbing permit as required by the City of Manchester Planning and Community Development Department. . . .  Until the violation is corrected and per the statute, no person shall occupy the dwelling, unless for the purposes of abating the violation.
>
>   . . .
>
>   Additionally, per discussion with City of Manchester Planning and Community Development Department, a Certificate of Compliance may be required when renting and/or subletting this unit. . . .

---

[4] In the complaint, Lath states that he rented the unit to Peter Fiasconaro on July 27, 2018.  Compl. ¶ 15.  Lath, however, references Exhibit 2 of his Amended Complaint, which indicates that he rented the unit on July 27, 2017.  Doc. 8-2, Compl. Exh. 2.

> Failure to correct this violation and comply with this Order may result in further action as allowed by statute.

Doc. 8-3, Compl. Exh. 3.

Lath alleges that, in November 2017, he "believes" PennyMac posted an abandonment notice on the door of the unit. Compl. ¶ 29. The notice stated as follows:

> This property has been determined to be vacant/abandoned. This has been reported to the mortgage servicer. The mortgage servicer intends to protect this property from waste and/or deterioration.
>
> This property may have its locks replaced and/or plumbing systems winterized in the next few days. If this property is NOT VACANT and ABANDONED, please call MCS immediately . . . .

Doc. 16-25.[5]  In the Amended Complaint, Lath states that he "believes and on that basis alleges that" PennyMac "actually changed the locks" on the unit, preventing him from entering it. Compl. ¶ 31. Lath alleges that he also had furniture, clothes, and electronics inside the unit.

On February 9, 2018, a foreclosure notice on the unit was issued. Id. ¶ 18; Compl. Exh. 4. The foreclosure notice stated that the unit was to be sold at a foreclosure sale on March 30,

---

[5] The court has considered and referred to Exhibit 25, attached to Lath's objection to PennyMac's motion, because it is central to his claims of trespass and conversion and is sufficiently referred to in the complaint. See Compl. ¶¶ 29-31, 33, 39, 41-42

2018. A notice was published in a newspaper beginning on February 16, 2018. The auction was conducted on March 30, and the unit was auctioned for $90,000. However, the buyer backed out of the sale because of "the ongoing litigation." Doc. 14, PennyMac Answer ¶¶ 20, 45.

In his Amended Complaint, Lath brings claims for a declaratory judgment (Count 1); conversion (Counts 2 and 5); trespass (Count 3); and unjust enrichment (Count 4). In Count 1, Lath seeks a declaratory judgment that he "was under a certificate of compliance or violations thereof for such compliance as of March 30, 2018." Compl. ¶ 25. He states that, if the court declares this, then "any foreclosure sale of Lath's property . . . without a transfer permit or certificate of compliance is unlawful." Id. ¶ 26. Thus, Lath concludes, he seeks a declaration "that the transfer of property from PennyMac Loan Services, LLC to Credit Suisse without a transfer permit is unlawful pursuant to [Housing Code] § 150.109(B)."[6] Id. ¶ 27.

In Count 2, Lath asserts that PennyMac converted his

---

[6] "No rental property being rented, offered for rent, or otherwise occupied under a certificate of compliance shall be bought, sold, or otherwise transferred without an application for assignment of certificate of compliance, including the fee, required by this subchapter, having first been filed with the Department." Housing Code § 150.109(B).

7

property, including the unit and the personal property inside, by changing the locks.  In Count 3, Lath alleges that PennyMac trespassed on a "limited common area" by posting the abandonment notice on his door.  Lath states that PennyMac did not have a key to the secured building where his unit was located and that he did not give PennyMac permission to post the notice.  Citing RSA 356-B:12, V, Lath asserts that the door to his unit was "within the apparatus designed to serve Lath's unit exclusively and is therefore deemed as a limited common area appertaining to that unit exclusively."  Id. ¶ 41.

## Discussion

PennyMac filed a motion to dismiss Counts 1, 2, and 3 of Lath's Amended Complaint.  Lath objects.[7]  PennyMac did not file a reply.

### A. Declaratory Judgment (Count 1)

PennyMac argues that Lath cannot challenge the foreclosure

---

[7] In his objection, Lath also offers a profusion of new allegations against PennyMac, including constructive eviction (doc. no. 16 at 17) and additional instances of alleged trespass (doc. no .16 at 14).  He alleges that his property was not in default.  Doc. 16 at 13.  The allegations were not in the Amended Complaint, and the arguments related to the new allegations are not responsive to PennyMac's motion to dismiss.  Therefore, the court does not consider them further.

sale because he failed to petition the New Hampshire Superior Court to enjoin the sale prior to foreclosure.  PennyMac also contends that Lath lacks standing to enforce the Housing Code because there is no private right of action for violations of the Housing Code.  Finally, PennyMac argues that the court cannot deem past conduct illegal through a declaratory judgment because it would be an improper advisory opinion.[8]

1. Petition to Enjoin Sale

RSA 479:25, II "bars any action based on facts which the mortgagor knew or should have known soon enough to reasonably permit the filing" of a petition to enjoin the foreclosure sale in the superior court before the sale occurs.  Murphy v. Fin. Dev. Corp., 126 N.H. 536, 540 (1985).  Lath does not dispute that he received the notice required by RSA 479:25 or that he failed to file a petition to enjoin the sale.  Instead, he argues that he was unable to challenge the foreclosure sale before it occurred because the violation of § 150.109 did not occur until the unit was sold.  Doc. 16 at 17-18.  Before the

---

[8] Given that the court recommends judgment on the pleadings as to Count 1 because Lath failed to petition to enjoin the sale and because the Housing Code does not contain a private right of action, the court does not reach this alternative argument.

sale occurred, however, Lath could have sought to enjoin the sale by presenting to the superior court the theory that the proposed sale could not go forward until PennyMac met the requirements of § 150.109.  Because Lath failed to do so, RSA 479:25, II bars Count 1 of the Amended Complaint.

2. Private Right of Action

Even if Count 1 was not barred by RSA 479:25, Lath cannot pursue a claim that PennyMac violated a local ordinance without a private right of action to enforce the ordinance.  See Goldstein v. Town of Bedford, 154 N.H. 393, 395 (2006); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 281-82 (2002) ("Since the Act conferred no specific, individually enforceable rights, there was no basis for private enforcement, even by a class of the statute's principal beneficiaries."); San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 30-34 (1st Cir. 2010); BK v. N.H. Dep't of Health and Hum. Servs., 814 F. Supp. 2d 59, 64 (D.N.H. 2011).  A private right of action must be either express or implied from the relevant legal source.  See San Juan Cable LLC, 612 F.3d at 30; Blagbrough Family Realty Trust v. A&T Forest Prods., Inc., 155 N.H. 29, 45 (2007) ("Where there is no explicit or implicit private right of action to seek a declaration of the statute's violation, we will conclude that

10

the statute does not do so.").

RSA 48-A:2 and 48-A:3 empower municipal authorities to adopt ordinances such as those in the Housing Code. Consistent with those statutes, the Housing Code vests enforcement powers to the Planning and Community Development Department, with a limited ability of city residents to petition the Department to investigate alleged violations. See Housing Code §§ 150.142 ("Whenever the Department determines that there has been or is a violation . . . he may give or cause to be given notice of such violation . . . ."), 150.143 ("The Planning and Community Development Department and its delegated officers shall exercise the powers that may be necessary and convenient to carry out and effectuate the purposes and provisions of this chapter . . . ."), 150.146 (permitting certain petitions by residents about violations to be made to the Planning and Community Development Department); see also Housing Code §§ 150.147 (providing that, under appropriate circumstances, the Planning and Community Development Department has the power to issue orders requiring property owners to repair, alter, or improve dwellings), 150.149 ("If the owner fails to comply with an order [under § 150.147] the Planning and Community Development Department may file a petition in the Superior Court in which it shall set forth the charges . . . .").

11

Lath contends that he can enforce the Housing Code because tax notices continue to be addressed to him and because he may become liable for damages resulting from the nuisances in the unit. Doc. 16 at 20-21. These facts were not alleged in the Amended Complaint. Further, there are no provisions in the Housing Code that permit a person to enforce the Housing Code on those grounds. Lath also cites Bagley v. Controlled Env't Corp., 127 N.H. 556, 563-64 (1986) (holding that a private right of action existed to enforce certain provisions of RSA Chapter 147-A (hazardous waste disposal)), in support of his argument that a private right of action exists to enforce the Housing Code, but Bagley is inapposite to Lath's claim.

Because no private right of action exists to enforce the Housing Code, Lath cannot obtain a declaratory judgment stating that PennyMac violated the Housing Code.

B.   Conversion (Count 2)

PennyMac argues that Lath fails to allege any concrete basis for his allegation that he "believes" PennyMac posted the abandonment notice on the door of the unit and changed its locks. PennyMac argues that the court must disregard Lath's allegation as speculative.

In evaluating a motion for judgment on the pleadings, the

12

court ordinarily assumes the complaint's factual allegations to be true, but "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare and speculative that they fail to cross the line between the conclusory and factual." Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011).  In the Amended Complaint, Lath alleges that PennyMac was the unit's mortgagee.  The abandonment notice states that "[t]he mortgage servicer intends to protect this property from waste and/or deterioration," and "[t]his property may have its locks replaced . . . ."[9]  It can be reasonably inferred from the notice that the mortgage servicer or mortgagee, i.e., PennyMac, was contemplating changing the unit's locks and ordered the notice to be placed on the door.  Therefore, PennyMac has not shown that it is entitled to judgment on the pleadings as to Count 2.

    C.  Trespass (Count 3)

Lath alleges that PennyMac committed a trespass when it posted the abandonment notice on the door of the unit.  Compl. ¶¶ 38, 42.  Trespass is the intentional invasion of the property of another.  Case v. St. Mary's Bank, 164 N.H. 649, 658 (2013).

---

[9] As noted above, the court has considered Exhibit 25 to Lath's objection, which detailed the text of the notice, because it is sufficiently referred to in the complaint and central to Lath's allegations.

"One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally . . . enters land in the possession of the other . . . ." Id. (quoting Restatement (Second) of Torts § 158).

   1. Intent

   Citing Brown v. Saint-Gobain Perf. Plastics Corp., 2017 WL 6043956 (D.N.H. Dec. 6, 2017), PennyMac argues that trespass requires the defendant's knowledge that his trespass is "substantially certain" to "result in harm to the plaintiff." Doc. 15-1 at 9. PennyMac asserts that the abandonment notice that was posted was intended to protect the unit, not harm it.

   PennyMac's reliance on Saint-Gobain is misplaced. An intent to cause harm to the property is not a necessary element of trespass. See Case, 164 N.H. at 658; cf. Restatement (Second) of Torts § 163 ("One who intentionally enters land in the possession of another is subject to liability to the possessor for trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest."). In Saint-Gobain and the cases cited by Saint-Gobain, the issue was whether a trespass was intended, as

14

opposed to involuntary or accidental, not whether harm to the property was intended. Saint-Gobain, 2017 WL 6043956, at *8; see also Thompson v. Forest, 136 N.H. 215, 219 (1992) ("The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather, it is an intent to bring about a result which will invade the interests of another in a way that the law forbids.") (quoting W.P. Keeton et al., Prosser and Keeton on the Law of Torts § 8, at 36 (5th ed. 1984)). Because the allegations here are that the alleged trespass was intentional rather than involuntary or accidental, Saint-Gobain is not applicable.

2. Standing to Assert Trespass

Next, PennyMac argues that Lath fails to allege a trespass onto his own property. PennyMac contends that the entryway into the condominium building is a "common area." Doc. 15-1 at 8. PennyMac asserts that only the condominium association has standing to allege that PennyMac trespassed on the common area. Id. at 8-9. Lath responds that, under RSA 356-B:12, II, the door of his unit was considered part of his unit and therefore was for his exclusive use.

PennyMac did not address Lath's contention that the exterior of the door to the unit was his property, which is

15

alleged in the Amended Complaint.  Compl. ¶ 41 ("[T]his entry door, upon which the Defendants posted this notice was within the apparatus designed to serve Lath's unit exclusively . . . .").  Furthermore, whether or not the exterior of the door to Lath's unit was part of the condominium's common area is a question that must be determined by first consulting the condominium instruments, which designate the boundaries of condominium units.  See RSA 356-B:12 ("Except to the extent otherwise provided by the condominium instruments . . . .  To the extent that walls, floors, and/or ceilings are designated as the boundaries of the units or of any particular units without further specification, all doors and windows therein . . . shall be deemed a part of such units . . . while all other portions of such walls, floors, and/or ceilings shall be deemed a part of the common area.").  The relevant condominium instruments are not part of the record before the court.

    Construing the complaint in the light most favorable to Lath, the court assumes that the door was part of Lath's unit for the purposes of the present motion.  Thus, PennyMac has not shown that judgment in its favor on Count 3 is warranted on the limited record before the court.

16

## Conclusion

For the foregoing reasons, the court recommends that the district judge grant PennyMac's partial motion for judgment on the pleadings (doc. no. 15) in part and deny it in part. The court recommends that the district judge grant the motion as to Count 1 and deny it as to Counts 2 and 3.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

June 4, 2019

cc:  Sanjeev Lath, pro se
     Kevin P. Polansky, Esq.