**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Sanjeev Lath</u>

      v.           Case No. 18-cv-928-PB
               Opinion No. 2020 DNH 067
<u>PennyMac Loan Services, LLC</u>


<u>MEMORANDUM AND ORDER</u>


     Sanjeev Lath, the mortgagor and former owner of a
condominium unit in Manchester, New Hampshire, filed this post-
foreclosure lawsuit against PennyMac Loan Services, LLC
("PennyMac"), the foreclosing mortgagee.  He asserts state-law
claims for trespass, conversion, and unjust enrichment.
PennyMac has moved for summary judgment on all claims.  For the
following reasons, I grant PennyMac's motion.


### I. BACKGROUND


     In August 2013, Lath purchased condominium unit number 710
located at 7 Northbrook Drive in Manchester, New Hampshire.
Franklin American Mortgage Company provided a loan for the
purchase in the amount of $53,418, secured by a mortgage on the
property.  PennyMac subsequently acquired that mortgage.

     The mortgage agreement authorized the mortgagee to "inspect
the Property if the Property is vacant or abandoned or the loan
is in default" and to "take reasonable action to protect and

preserve such vacant or abandoned property."  Doc. No. 53-3 at 4.  It also specified that "[a]ny notice to Borrower provided for in this Security Instrument shall be given by delivering it or mailing it by first class mail . . . directed to the Property Address . . . ."  Doc. No. 53-3 at 6.

Lath lived in the unit until December 2016, when an accidental fire broke out in the kitchen and the City of Manchester ("City") Fire Department prohibited occupancy pending repairs.  Two months later, Lath applied for a "Certificate of Compliance" under the City's Housing Code in order to rent out the unit.  After an inspection of the property in February 2017, the City denied his application and issued a violation notice due to fire damage and other conditions on the premises.

After making renovations, Lath moved back into the unit around May 2017.  In July 2017, however, he was forced to move out due to a restraining order that prohibited him from coming within 100 feet of a neighbor who lived across the hall from Lath's unit.  Later that month, Lath rented out the unit, but the City removed his tenant three days later due to a Health Code violation, citing a broken sewer pipe and resultant discharge into other units.  The City issued a notice prohibiting occupancy in the unit until the violation was abated.

Lath made no attempts to remedy the Health Code violation. Although the restraining order against him was subsequently modified to allow Lath to reside in his unit, he did not return to live there.  His last visit to the unit was in July or August 2017, when he came with a paid police escort to gather some belongings and store most of his possessions inside a locked bedroom.

Lath stopped making payments on the mortgage loan in August 2017.[1]  In November 2017, PennyMac posted a vacancy notice on the door of Lath's unit.  The notice stated:

> This property has been determined to be vacant/abandoned.  This has been reported to the mortgage servicer.  The mortgage servicer intends to protect this property from waste and/or deterioration. This property may have its locks replaced and/or plumbing systems winterized in the next few days.  If this property is NOT VACANT and ABANDONED, please call MCS immediately . . . .

Doc. No. 53-7 at 2.  An inspection report that PennyMac had commissioned that month cited as evidence of vacancy the City's notice prohibiting occupancy, and it noted that there was "a no trespass against the current owner by the HOA."  See Doc. No. 56-3 at 41-42.

---

[1] PennyMac states that the loan has been in default since February 2016.  See Doc. No. 53-6 ¶ 6.  For purposes of summary judgment, I credit Lath's evidence showing that, with some exceptions, he continued making monthly payments through July 2017.  See Doc. No. 66-5.  I note, however, that this apparent disagreement is immaterial, as it has no bearing on any of the claims at issue.

PennyMac changed the locks to the unit in February 2018. The following month, it offered the unit for sale at a foreclosure auction.  The highest bid was $90,000.  After Lath filed this lawsuit in October 2018, however, the third-party bidder withdrew from the sale.  As a result, the sale reverted to PennyMac's bid, which was in the amount of the outstanding loan balance of $37,422.16.

Invoking this court's diversity jurisdiction, Lath's amended complaint sought declaratory judgment that the foreclosure sale was unlawful (Count 1) and asserted common-law claims for conversion (Counts 2 and 5), trespass (Count 3), and unjust enrichment (Count 4).  See Doc. No. 8.  I granted PennyMac's partial motion for judgment on the pleadings as to Count 1.  PennyMac now moves for summary judgment on the remaining claims, and Lath objects.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In this context, a "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (internal quotation marks omitted).  A "genuine dispute" exists if a jury

could resolve the disputed fact in the nonmovant's favor. Ellis
v. Fidelity Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence
that "it believes demonstrates the absence of a genuine issue of
material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986); accord Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853
(1st Cir. 2016). Once the movant has properly presented such
evidence, the burden shifts to the nonmoving party to designate
"specific facts showing that there is a genuine issue for
trial," Celotex, 477 U.S. at 324, and to "demonstrate that a
trier of fact could reasonably resolve that issue in its favor."
Flovac, 817 F.3d at 853 (internal quotation marks and brackets
omitted). If the nonmovant fails to adduce such evidence on
which a reasonable factfinder could base a favorable verdict,
the motion must be granted. See id. In considering the
evidence presented by either party, all reasonable inferences
are to be drawn in the nonmoving party's favor. See Theriault
v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018)

## III. ANALYSIS

In his amended complaint, Lath asserts claims for trespass,
conversion, and unjust enrichment arising from PennyMac's
actions related to the securing and foreclosure of his

condominium unit.  I address the claims in turn and conclude
that none has merit.

## A.   Trespass (Count 3)

Lath alleges that PennyMac committed a trespass when it
posted the vacancy notice on the front door of his unit.[2]
PennyMac argues that the claim fails because the terms of the
mortgage expressly authorized the entry.

A trespass is "an intentional invasion of the property of
another." Moulton v. Groveton Papers Co., 112 N.H. 50, 54
(1972).  Drawing on the Restatement (Second) of Torts, New
Hampshire imposes trespass liability when a person
"intentionally . . . enters land in the possession of the
other," regardless of whether the entry causes harm to the
property. Case v. St. Mary's Bank, 164 N.H. 649, 658 (2013)
(quoting Restatement (Second) of Torts § 158 (1965)).  "Conduct
which would otherwise constitute a trespass is not a trespass if
it is privileged." Id. (quoting Restatement (Second) of Torts
§ 158 cmt. e).  Such a privilege can be derived from multiple

---

[2] Lath has described additional instances of alleged trespass in
his objection to PennyMac's motion for summary judgment.  It is
well-established, however, that "a party may not generate a
trial-worthy dispute at summary judgment merely by presenting
unsubstantiated allegations in its memoranda or briefs." Nieves
v. Univ. of P.R., 7 F.3d 270, 280 (1st Cir. 1993).  Furthermore,
"summary judgment is not a procedural second chance to flesh out
inadequate pleadings." Fleming v. Lind-Waldock & Co., 922 F.2d
20, 24 (1st Cir. 1990).  Accordingly, I do not consider those
freestanding allegations.

sources, including the consent of the possessor, the actor's
interest in the property at issue, or the actor's interest in
abating a private or public nuisance.  Id.

The New Hampshire Supreme Court's application of these
principles in Case is instructive.  The plaintiff there was a
tenant in a building owned by a landlord who had financed the
purchase of the property through two mortgages from St. Mary's
Bank.  Id. at 651.  After the building became uninhabitable due
to lack of upkeep, the City prohibited occupancy and the
plaintiff could no longer live in his apartment.  Id. at 652.
Prior to conducting a foreclosure sale, the bank changed the
locks and boarded up the entryways of the property.  Id.  The
New Hampshire Supreme Court affirmed the trial court's summary
judgment ruling that the bank did not commit a trespass.  Id. at
658-59.  The court held that the bank "was privileged to enter
by virtue of its mortgage agreement, which expressly allowed it
to secure the property" to protect its interest therein.  Id.

By the same token, no reasonable factfinder could find that
PennyMac trespassed on Lath's property when it posted the
vacancy notice on the door of his unit in November 2017.  The
mortgage agreement authorized PennyMac to enter and inspect the
property in the event of vacancy, abandonment, or default.  It
is undisputed that the unit was vacant after July 2017, when the

7

City prohibited occupancy.[3]  Under those circumstances, the mortgage agreement permitted PennyMac to "take reasonable action to protect and preserve such vacant or abandoned property." Doc. No. 53-3 at 4.  Lath has not shown that posting the vacancy notice, which outlined the steps PennyMac intended to take to protect its interest in the property, was anything other than reasonable.  See Case, 164 N.H. at 658; see also Patrick v. PHH Mortg. Corp., 998 F. Supp. 2d 478, 494–95 (N.D. W. Va. 2014) (granting summary judgment to lender on trespass claim where lender placed notice on borrower's doorknob because deed of trust permitted lender to "make reasonable entries upon and inspections of the Property"); Moseley v. CitiMortgage Inc., No. C11-5349RJB, 2011 WL 5175598, at *10 (W.D. Wash. Oct. 31, 2011), aff'd, 564 F. App'x 300 (9th Cir. 2014) (same).

Furthermore, the mortgage agreement expressly sanctioned providing notices to Lath "by delivering [them] . . . to the Property Address."  Doc. No. 53-3 at 6.  The agreement therefore contemplated leaving notices such as the vacancy notice at Lath's unit.  Cf. Erdberg v. Five Bros. Mortg. Co. Servs. & Securing, Inc., No. 2:16-CV-01880-SGC, 2019 WL 995888, at *6 (N.D. Ala. Mar. 1, 2019) (finding no trespass where lender

---

[3] Although Lath argues there is a genuine dispute of material fact as to whether he abandoned the unit, in his responses to PennyMac's first set of interrogatories, he conceded that the unit was "[v]acant after July 2017."  See Doc. No. 53-5 at 8.

affixed notice stickers to exterior of property in part because mortgage agreement provided that notices to borrower were given "when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means").

Because the terms of the mortgage agreement, to which Lath consented, authorized PennyMac to place the vacancy notice on the door of Lath's unit, its conduct was privileged.  See Case, 164 N.H. at 658.  Accordingly, the trespass claim fails as a matter of law.

**B.    Conversion (Count 2)**

Lath also alleges that, by changing the locks, PennyMac converted the personal property that Lath had left inside his unit.[4]  PennyMac contends that the claim is without merit because it acted in good faith to secure and protect the vacant unit, and it never denied Lath the right to retrieve his belongings.

Under New Hampshire law, "[t]he gist of the action of conversion is the proof of wrongful deprivation of property to one entitled to possession." Pac. & Atl. Shippers, Inc. v. Schier, 109 N.H. 551, 554 (1969).  To prevail on a claim of conversion, a plaintiff must show that a defendant intentionally

---

[4] In his surreply brief, Lath also alleges that PennyMac converted his property when it sold "the chattel that were within the premises" at "a second foreclosure sale" of the unit held on December 29, 2019.  See Doc. No. 66 at 3-4.  As I explained before, such freestanding allegations cannot create a triable issue at summary judgment.  See supra n.2.

exercised "unauthorized dominion or control over the plaintiff's property that seriously interferes with the plaintiff's right to the property." Askenaizer v. Moate, 406 B.R. 444, 452 (D.N.H. 2009); see Muzzy v. Rockingham Cnty. Tr. Co., 113 N.H. 520, 523 (1973).  "The interference must be of such seriousness as to justify the imposition of a forced judicial sale on the defendant." LFC Leasing & Fin. Corp. v. Ashuelot Nat. Bank, 120 N.H. 638, 640 (1980)).  Among the factors that courts consider in determining the seriousness of the interference are "the extent and duration of the exercise of control over the goods, the intent to assert a right inconsistent with the other party's right of control, and good faith." Kingston 1686 House, Inc. v. B.S.P. Transp., Inc., 121 N.H. 93, 95 (1981); accord Campbell v. CGM, LLC, 2017 DNH 004, 2017 WL 78474, at *13 (D.N.H. Jan. 9, 2017); Sykes v. RBS Citizens, N.A., 2016 DNH 031, 2016 WL 738210, at *2 (D.N.H. Feb. 23, 2016).  Applying these principles, I conclude that PennyMac's action in changing the locks to Lath's vacant unit, without more, did not amount to a conversion of his personal property.

First, Lath cannot show that PennyMac's conduct in changing the locks was "unauthorized" or "wrongful."  See Askenaizer, 406 B.R. at 452; Schier, 109 N.H. at 554.  PennyMac had a legitimate reason, sanctioned by the express terms of the mortgage agreement, to change the locks.  The mortgage agreement

authorized PennyMac to take "reasonable action" to secure the
unit in the event of vacancy.  <u>See</u> Doc. No. 53-3 at 4.  The
undisputed evidence shows that PennyMac changed the locks after
the unit was left vacant and uninhabitable.  There is no
evidence that this action was anything but reasonable.

Second, Lath has mustered no evidence that PennyMac acted
in bad faith.  <u>See</u> <u>Kingston 1686 House</u>, 121 N.H. at 95.  He
merely points out that, apart from changing the locks, PennyMac
took no further action to winterize the property.  But PennyMac
had no obligation to do so.  The vacancy notice stated that
PennyMac "<u>may</u> have [the] locks replaced <u>and/or</u> plumbing systems
winterized."  Doc. No. 53-7 at 2 (emphasis added).  Neither this
notice nor the mortgage agreement conditioned changing the locks
on taking further steps to secure and protect the unit from
deterioration.  On this record, no reasonable jury could find
that PennyMac's good-faith reason to change the locks was a
pretext to deprive Lath of his property.

Third, there is no evidence in the record that PennyMac was
asserting any interest in Lath's personal property.  <u>See</u>
<u>Kingston 1686 House</u>, 121 N.H. at 95.  At no time did PennyMac
prohibit Lath from removing his belongings from the unit, and he

admittedly made no request or attempt to take possession of the property after the locks were changed.[5]

Accordingly, Lath cannot show that PennyMac's action in changing the locks so seriously interfered with his right to his personal property "as to justify the imposition of a forced judicial sale on the defendant." LFC Leasing, 120 N.H. at 640. His conversion claim, therefore, fails.

## C.   Unjust Enrichment (Count 4)

Finally, Lath asserts a claim for unjust enrichment, alleging that PennyMac retained a surplus in excess of $48,000 from the foreclosure sale.  PennyMac responds that the uncontroverted evidence shows that the sale did not yield any surplus funds.  Lath's claim is meritless for two reasons.

First, unjust enrichment is not available as a remedy here because the mortgage agreement controlled the distribution of proceeds from the foreclosure sale.  "Unjust enrichment is an equitable remedy that is available when an individual receives 'a benefit which would be unconscionable for him to retain.'" Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 669 (2013)

---

[5] Lath did ask PennyMac for a copy of the keys in January 2018 and received no response, but this was before the locks were, in fact, changed.  He again requested the keys after the foreclosure sale, which PennyMac denied because he was no longer the unit's owner.  In neither case did he request that somebody provide him access to the unit to collect his belongings.  See Doc. No. 53-5 at 9-12.

(emphasis in original) (quoting Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210 (2009)).  This remedy, however, "may not supplant the terms of an agreement."  Id.  The reason is that "restitution is subordinate to contract as an organizing principle of private relationships, and the terms of an enforceable agreement normally displace any claim of unjust enrichment within their reach."  Id. (quoting Restatement (Third) of Restitution & Unjust Enrichment § 2 cmt. c (2011)) (alterations omitted).  Thus, the existence of a valid contract covering the subject matter at issue precludes recovery under a theory of unjust enrichment.  Id.

The mortgage agreement is the governing contract between Lath and PennyMac.  It provides that "[t]he proceeds of the [foreclosure] sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it."  Doc. No. 53-3 at 7.  Thus, although Lath could have brought a breach of contract claim if the sale resulted in a surplus to which he was entitled, the existence of the mortgage agreement precludes his unjust enrichment claim.

In any event, the unjust enrichment claim fails because the undisputed evidence shows that there was no surplus from the foreclosure sale.  Although the highest bid at the auction would

13

have resulted in a substantial surplus, the third-party bidder withdrew from the sale due to the instant litigation, and thus the sale reverted to PennyMac's bid.

Not one to admit defeat, Lath argues that there is, nonetheless, conflicting evidence as to whether PennyMac's bid was higher than the amount he owed, such that it too may have resulted in a surplus, albeit a much smaller one (approximately $2,000). The record does not support Lath's contention. PennyMac has submitted affidavits attesting that its bid of $37,422.16 was in the amount of the outstanding balance of the loan, including principal, interests, costs, and fees. See Doc. No. 53-6 ¶ 10; Doc. No. 62 ¶ 6. In his affidavit, Lath cites documents showing that PennyMac inconsistently reported his principal on IRS Form 1099-A,[6] and he states that an accounting statement he downloaded from PennyMac's website listed the principal, foreclosure fees, and foreclosure costs totaling $35,458.50. See Doc. No. 66-8 ¶¶ 9-14.

The evidence Lath has marshalled, however, does not controvert PennyMac's evidence that there was no surplus. First, whether the outstanding principal was $33,601.25 or $37,422.16 is not a material fact because it does not have the

---

[6] In 2018, PennyMac reported the principal as $33,601.25. See Doc. No. 66-7. In 2019, however, it reported the principal as $37,422.16. See Doc. No. 66-6.

"potential to affect the outcome of the suit." Cherkaoui, 877 F.3d at 23 (internal quotation marks omitted).  If it was the latter, then PennyMac's bid equaled the principal owed, so it yielded no surplus.  If it was the former, the fact that the principal was lower than the bid is consistent with PennyMac's evidence that its bid also included interests, costs, and fees assessed on the loan.  Second, the accounting statement upon which Lath relies does not show that, at most, PennyMac was owed $35,458.50.  Even if only "Foreclosure Fees" and "Foreclosure Costs" are considered,[7] their total is $3,730.50 as of May 2018.  See Doc. No. 66-5 at 3.  Together with the principal listed ($33,601.25), this yields a total loan balance of $37,331.75, an amount that closely approximates PennyMac's bid.  See Doc. No. 66-5 at 3.  The evidence that Lath has submitted, therefore, supports PennyMac's sworn statements that its bid did not result in a surplus.  Because there is no genuine dispute of material fact concerning the existence of a surplus from the foreclosure sale, Lath's unjust enrichment claim has no merit.[8]

---

[7] The accounting statement also itemizes "Property Preservation Fees" and "Property Inspection Fees."  See Doc. No. 66-5 at 3.

[8] Lath's claim that PennyMac unlawfully converted the surplus funds (Count 5) fails for the same reason – no surplus funds exist.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, I grant PennyMac's motion for summary judgment (Doc. No. 53) on all remaining claims.  The clerk of the court is directed to enter judgment in accordance with this order and close the case.

SO ORDERED.

<u>/s/ Paul J. Barbadoro</u>
Paul J. Barbadoro
United States District Judge

April 23, 2020

cc:  Sanjeev Lath, pro se
     Kevin P. Polansky, Esq.